Good morning, everyone. We're here today. Good morning, Judge Rovner. Good morning. Good morning. We're here today for oral arguments. We're going to begin with appeal number 25-2144, Chicago Women in Trade v. Donald J. Trump. We'll begin with oral argument from Mr. McArthur. Thank you, Chief Judge Brennan, and may it please the Court, Eric McArthur. For the federal defendants, I would like to reserve three minutes to all rebuttal, if I may. The executive order at issue in this case directs federal agencies to include two terms in their contracts and grants. One, recognizing that compliance with the federal anti-discrimination laws is material to the government's payment decisions, and one requiring the counterparty or recipient to certify that it does not operate any DEI programs that violate any applicable federal anti-discrimination law. Mr. McArthur, forgive me for jumping in like this, but I'd really like to start you off, please. You see, the reality of these J20 and J21 orders is that programs that have been seen as combating historical discrimination were suddenly characterized as violating anti-discrimination laws with no definition as to how and when DEI programs will fall on the illegal side of the analysis. You know, the district court complained that the government emphasized that the certification provision implicates only illegal DEI programs, but according to the district court, neither in briefing or oral arguments did the government provide any definition to what is now considered illegal. I would really appreciate it if you could shed light on that issue now that would allow programs to predict with some reliability what type of DEI activities are still lawful, if any. Are there any? Certainly, Judge Rovner, there are DEI programs that are lawful. And the thing that I would point your honor to that speaks most directly to this question is the memorandum the Attorney General put out on July 29th of last year. This is a document that's not in the record of this case. CWIT has asked the court to take judicial notice of it. We have no opposition to that. I don't see why they think that document helps them. It's a nine-page detailed memorandum that walks through the various ways that DEI programs can run afoul of the anti-discrimination laws. Why are you telling us this now instead of in your brief? Well, we've consistently taken the position, Judge Hamilton, that there's nothing in the executive order or any of the documents that they have pointed to that takes the position that DEI is necessarily unlawful. And that is the core error that pervades, that affects both the standing analysis. That's not really an answer to my question. The district court asks the government repeatedly. Judge Rovner has been asking. The briefs have been asking. And now you're saying, as I believe for the first time, look at the AG's memo that's not in the record from July. And that's the answer. Is that the position? Well, they introduced the AG record in their brief, and so I think it's fair game for me to point to that.  But you understand the frustration from everybody dealing with this case on the court side has been the government's failure to answer that question. Hence, Judge Rovner's very polite request that you answer that question finally. And I would point the court to that document. But this is a case that challenges the executive order. Forgive me. Oh, please, Mr. McCarty. Forgive me. Help us now, today. Now. Don't keep. Please don't point us to something that is not in front of us at this point. I would point your honor to the terms of the executive order itself, which is what is challenged in this case. There's not a single word in the executive order that says all DEI is unlawful. In fact, if you look at Section 1 of the executive order, which sets out the purpose, it talks about race and sex-based preferences that have been adopted under the guise of DEI that can violate the civil rights laws of this nation. It does not say that. But can. You see, we need more than that to understand the argument. Because, for instance, the certification provision applies to any programs promoting DEI that violates anti-discrimination laws, whether federally funded or not. And so if CWIT operates a program, for instance, with non-federal funds, that advocates for a pro-DEI change to anti-discrimination laws. For instance, wouldn't that be protected by the First Amendment activity? But yet it would run afoul of the certification provision. So it would be protected. That sort of advocacy would be protected by the First Amendment. But I disagree that it would run afoul of the certification provision. And that's another way in which I think the district court here misread the executive order. The executive order doesn't regulate abstract advocacy for DEI. It doesn't say you have to certify that you don't promote DEI. It says you have to certify that you don't operate any programs promoting DEI that violate any applicable federal anti-discrimination law. Let's talk about that distinction. We've got four district court opinions that have been issued on the executive order, one from Maryland, one from D.C., one from California. Then Judge Cannelli's here. Two have gone one way, the certification provision. Two have gone the other. Is the distinguishing metric between the way those courts handle this issue, this conduct versus speech question? I think that it is, Chief Judge Brennan, and I think it goes to how you read the executive order. I don't think there's any dispute if the executive order actually required parties to certify that they don't promote DEI in the sense of abstract advocacy. That would be an unconstitutional condition that violates the First Amendment. But that's not what this executive order does emphatically. And their ultimate complaint here is that they're concerned that the government might adopt an interpretation of the federal anti-discrimination laws that they disagree with, and that could potentially trench on First Amendment-protected speech. They are free to raise that defense if the government does bring an enforcement action. Potentially they could even, if enforcement is sufficiently imminent, bring that affirmatively in a declaratory judgment case. But I don't see how that can make the executive order the proper subject of a challenge here, when on its face the executive order doesn't purport to change the content of the anti-discrimination laws. It takes the anti-discrimination laws as they are. As I understand Siewit's argument here, they're arguing that the leveraging of the federal funding envelops their speech. What's your response to that? So that's the line of cases, for example, from the Supreme Court in Agency for International Development, where the court's case law says that the federal government cannot use federal funds, cannot leverage federal funding, to regulate protected speech that's outside the scope of the program. That line of cases is inapposite here, because federal funding isn't being used to regulate protected speech. Conduct that violates the anti-discrimination laws, race-based discrimination, sex-based discrimination, that is not protected speech within the meaning of the First Amendment. The government is perfectly within its rights, so far as the First Amendment is concerned, to say that if you want federal money, if you want to be a federal grantee, if you want to be a federal contractor, you have to comply with federal anti-discrimination law in all of your activities, not just the ones we're funding, all of them. Nothing in the First Amendment requires the government to do business with entities that discriminate on the basis of race. Do you think, Mr. MacArthur, that plaintiffs' focused efforts on training women for construction trades violates the anti-discrimination laws? I don't know. There's nothing in this record that speaks to what they do with sufficient granularity that would allow me to evaluate that. I'm not an expert in anti-discrimination laws to begin with. But the record that they built here was built on this fundamental misunderstanding of the executive order, where they thought that it requires them to certify that they don't do anything that promotes DEI. And so they came in and put a record together that says we promote DEI. I don't think that's really their position. At least as I understand it, the position is everybody understands the qualification that violates the applicable federal anti-discrimination laws, but nobody knows what that means. A few minutes ago, you said the executive order takes those laws as they are, yet they were obviously issued as part of a 180-degree turn in federal anti-discrimination policy, maybe 179 degrees. And you seem to be asking us to ignore that context. No, I don't think I'm asking you to ignore that context, Judge Hamilton. My understanding of what this EO is intended to accomplish, I think it serves two purposes. It serves an educational purpose and a remedial purpose. I think they're related. And the educational purpose is that the president is saying there seems to be this notion that has taken root in our country, that if you are aiming to promote diversity, equity, and inclusion, you can engage in forms of discrimination that would otherwise violate the anti-discrimination laws. And the executive order is clarifying, no, that is not the case, simply because it's called DEI, simply because it's intended to promote diversity does not give you license to have race or sex-based preferences that would otherwise violate the anti-discrimination laws. And it also gives, the remedial purpose is it gives the government a basis to seek additional remedies under the False Claims Act if parties do engage in that sort of unlawful race or sex or other protected trait-based discrimination in violation of the anti-discrimination laws. If they can, in good faith, certify that their activities comply with federal anti-discrimination law, they have nothing to fear from this certification provision. Let's talk a little bit about the scope of the TRO. The four district court decisions, including Judge Kennelly's, originally all were issued pre-CASA versus Trump. Then Judge Kennelly has the opportunity to address the scope of the injunction in his October 30th order. He does not trim that back. The CASA decision relies, ties the relief to the harm. And he can't redress harms that are not alleged before the court. Where does that leave the scope of this injunction? And what are you asking us for purposes of the scope of the injunction? So for purposes of the scope, this injunction is clearly overbroad. Are you asking that it be limited just to CWIT? Well, obviously, in the first instance, we're asking that it be vacated. But if it's not vacated, we would ask that it be limited to CWIT and any entities, essentially, that CWIT partners with, that it's a subcontractor of or a subgrantee of. Meaning a legal relationship, not someone who they might collaborate with. Well, they would collaborate pursuant to that sort of contractual relationship or a grant relationship where they're a subgrantee. But doesn't that collaboration present a problem? Because as I understand Judge Connelly's reasoning in the October 30th order, it is that collaboration that's being chilled, and therefore this injunction will apply not just to CWIT but anybody who CWIT works with. I think that is the district court's concern. And that concern, even if valid, wouldn't justify a universal injunction that applies to every contractor and every grantee of the Department of Labor, even if it's in a sphere where CWIT has nothing to do with it. There are a host of grant programs or contract programs. For example, the Department of Labor has grant programs that deal with labor standards abroad. There's nothing in their record here that says they do anything internationally. There are grant programs about conditions in mines. There's nothing to suggest that they do anything that relates to mines. So the line you're asking us to draw is that there's a contractual relationship between CWIT and someone else. Yes. If they're collaborating pursuant to that sort of contractual relationship where they're a subcontractor or a subgrantee, that would be we concede within CASA's direction that the injunction needs to be confined to providing complete relief to the parties. One route that CASA left open, of course, is class actions to provide broader relief. To the extent that there is a problem with these executive orders and certification requirement, it would seem a little odd to litigate it in hundreds or thousands of separate cases. Would you see potential here for a 23B1 or B2 class? It's not a question I've thought about in any detail, Judge Hamilton. I don't recall them having a class allegation in this complaint. No, there's not at this point. But post-CASA, that's definitely on the table. And I'm inviting your comments if you don't want to address it. I think you'd have to march through the Rule 23 analysis and talk about whether the claims are typical, whether there are common issues of law and fact. I'm not sure how that would come out. Again, I haven't thought about that. But this injunction is clearly overbroad because it provides relief that is far greater than necessary to remedy any injuries to CWIT. And that's just the first part of the CASA analysis. CASA does not say that you can always and must always grant relief that fully remedies the injury of the plaintiff. The complete relief to the plaintiff is a ceiling. It's not a floor. And so even after you do that part of the analysis, you have to ask what is the consideration on the other side of the scales and take into account the government's legitimate interest in enforcing its policy. And that's a part of the analysis that the district court never did, either in its original order granting the PEI or in its later motion denying our motion for an indicative relief. Mr. McArthur, when we look at the Attorney General's memo, which I suppose we will now have to do, what do you want us to look for there? Well, I think the main thing that you'll see is, as in the executive order, there's not a single word in that nine-page memo that says that all DEI is necessarily unlawful. It could have been a lot shorter memo if that was the government's position, that DEI is necessarily unlawful. You wouldn't need nine pages of detailed explication of the legal principles, together with examples of the kinds of things that do violate the anti-discrimination laws. And does it include examples of things that do not? I'm not sure if the nine-page memo does. I would have to go back and look. I know they focus heavily on the Attorney General's initial memorandum from February 5th. Again, they mischaracterized that memo as saying that it says all DEI is unlawful. That one expressly does not. In footnote 1 of the February 5th memo, it says that this memo is intended to encompass programs, initiatives, or policies that discriminate, exclude, or divide individuals based on race or sex. And then it says it does not prohibit educational, cultural, or historical observances that celebrate diversity, recognize historical contributions, promote awareness without engaging in exclusion or discrimination. So those are examples, I think, in the Attorney General's own memo that they cite of DEI-type activities that do not run afoul of the federal anti-discrimination laws. I see I'm under my time. You can reserve the remainder of your time. Thank you. Thank you. Mr. Parker will move to you now for argument on behalf of the appellee. Good morning. May it please the Court. My name is Warrington Parker. I represent Chicago Women in Trade. Let me start with this. The government started by characterizing what the certification provision does. And the government accurately said that the first provision says that there is going to be a term that requires a statement that the government considers all anti-discrimination laws material. The government portrayed, but did not accurately state, the second provision. The government stated that the second provision prohibits the operation of DEI programs that violate anti-discrimination laws. It does not say that. It says a term requiring to certify that it does not operate any programs promoting DEI. Now, I'm going to tell you that is a term for speech. And I was trying to figure out how I could impress the Court that this is true. And I went to Title VII. Title VII so clearly controls conduct. It uses words that it's unlawful to fail or refuse to hire. That's section 2000E-2A1. To limit, segregate, or classify employees. That's conduct talk. Promote is not conduct talk. And the District Court caught this because if someone said, you should go to this DEI program that is promoting under the words of the executive order, under the certification provision. Number two. The District Court said, as I think animates some of the questions, the District Court said, the thrust of the orders is that the government's view of what is illegal has changed significantly with the new administration. And it has. In the record, you just heard the government read a footnote from GA-76. This is the February 5 Pambandi memo. Right? And the first paragraph of that statement, of this memo, is three sentences long. The first says, the Department of Justice is committed to enforcing all federal civil rights laws and ensuring equal protection under the law. The second talks about the Harvard admission case. The third. The third is critical to understanding how this administration, the agency that will enforce the False Claims Act, interprets DEI. And this is what the government did not read to you. President Trump issued Executive Order 14173. That's what we're here talking about. Making clear that policies relating to diversity, equity, and inclusion, and diversity, equity, inclusion, and accessibility, violate the text and spirit of our longstanding federal civil rights laws and undermine our national unity. That is not contradicted by the July 29 Pambandi memo that you, that Judge Hamilton asked about at the end. But in any case, even the July 29 Pambandi memo, two courts, one here in Chicago, City of Chicago versus Nome, found that that July 29 memo misinterprets current anti-discrimination law. So let me ask you, Mr. Parker, developing on that, we've got two district courts that are looking at the provision and concluding that there's conduct at issue. Yes. And you've got two district courts looking at and saying speech is at issue. I think you have more than two district courts, but let me start with the two that say that there's only conduct at issue. In those circumstances, do you agree that the speech versus conduct distinction is what's leading these courts in different analyses? I actually think it's this. So one court is the D.C. Circuit Court. D.C. District Court. I'm sorry, my mistake. I don't think that they fully actually take appreciated Pambandi's memo of February 5. The D.C. Circuit, the D.C. District Court case does mention it, but it never mentions the idea that Pambandi, the government, believes that all policies, not just activities, policies violate anti-discrimination laws. And this isn't an aberration. In City of Seattle versus Trump, pause. Following the certification provision, after our injunction was issued, every federal agency that is giving up money has, as requested, issued these regulations requiring these certifications. Okay? HHS has done that. DHS has done that. HUD has done that. DOJ has done it. In City of Seattle versus Trump, the Department of Transportation said that any policy, again, we're not just talking about any policy program or activity that is designed to achieve so-called DEI presumptively violates federal law. That is the view, and that, Your Honor, is what makes the difference between pure conduct and not. And, I would say again, the words used in the executive order promote, removes it, and at least, Your Honor, creates the ambiguity sufficient to allow us a summary injunction. At least gives us a basis for an injunction. We certainly have a First Amendment right to promote something, but there's no First Amendment right to engage in conduct that violates the law. I totally agree with you. So, a lot of these courts are struggling with this line that we're discussing, right? For example, take an event that might celebrate a certain race. Certainly, First Amendment right to promote that. Then, let's say that an entity wants to host an event that had been promoted for that particular race. Again, promotion, First Amendment, they have a right to do that. But that entity wouldn't have the right to discriminate and say, people who are not of that race that is being celebrated, they can't come. They wouldn't have the right to. That would be discrimination of the conduct. I agree. I agree. So, there are two responses to that, right? The first response is I want to go back to the language of the executive order because the executive order, the first paragraph of it says, handles all anti-discrimination law, right? It says it's material. Now, I think there's an unconstitutional condition problem with that, and I'll get back to that in just a moment. But the second paragraph is not parallel. The government's interest is actually not to enforce anti-discrimination laws. The only thing you have to certify is that you do not promote programs that are DEI. That's it. If the government were truly interested, that second paragraph would read, you have to certify you don't violate all anti-discrimination laws of the United States. But they're not. And there's a reason they signaled that. But how is that not a viewpoint? I mean, it is not a viewpoint neutral provision because what you have here is only programs promoting DEI are problematic, not those opposing it. And on top of that, it extends to the conduct of programs that are not themselves federally funded. So, isn't it improperly attempting to restrict speech outside of the federally funded programs? And, you know, when you take a look at that, at the February 5th memorandum, it's what it seems to be doing. Well, Judge Rotner, I wish you had let me make those arguments, but I'm going to agree with you wholeheartedly. There are two issues. It is viewpoint discriminatory because you can run any program you want that is anti-DEI. It can even violate the anti-discrimination laws of the United States and you don't have to certify it. Secondly, two cases so far have dealt with the issue of whether or not the government can impose conditions on non-federally funded programming through these certification provisions. City of Chicago versus Nome decided in July, in January this month, and City and County of Santa Clara versus Nome. And in both instances, the court said, you can't. You can't. And the government's brief in this instance cites to a 1983 Justice Marshall dissent, Guardians, and it says if you look at footnote 22 of that dissent, Justice Marshall says you can do that. First, it's a Title VI case. It was a federally funded program. But no one has ever picked up that case to say that the Supreme Court's unconstitutional conditions doctrine is somehow different. And they haven't cited a single case that would establish that you could literally rely on a Justice Marshall dissent to imply otherwise. Let's talk, Mr. Parker, a little bit about the scope of the injunction. Yeah, sure. We had four district courts that issued their opinions prior to CASA and then Judge Connelly had the opportunity October 30th to address the scope of the injunction under CASA, did not change it. CASA limits the scope of the injunction to the parties that have standing at the end of the decreed language of CASA. How is the scope here not overbroad? If you don't mind, and this is not a quibble, I would frame it this way. What I believe CASA said is if a party has standing, the scope of the injunction should be that which gives them complete relief. And if we're agreeable on that, I can move forward. Here's what Judge Connelly said and here's what's confounding about the government's argument now. There are two issues, but the first is, Judge Connelly. Can I ask you, please stay closer to the mic. I do that and I've been warned about that. That's what's recording. Yeah, no kidding. Thank you. Judge Connelly did this. He looked in the record and he saw the number of entities that had canceled or asked Chicago Women in Trade, canceled the relationship. Forgive me for interrupting, but were those entities all federally funded? Yes. Or did they include groups separate from CWIT's federally funded programs? My understanding, Your Honor, is that they were all federally funded programs as well. Not 100%, I don't believe, but I don't know that answer completely. Judge Connelly began to, I mean, it's in his papers where he said, first, the executive orders require compliance now so that you can certify in the future. You can't sort of say, yeah, we can't certify as of this date, but it requires compliance now. And he said, when the government proposed it be limited to the current relationships of Chicago Women in Trade, Judge Connelly, I think rightly, well, did rightly conclude, and this is left to his own discretion, he said, but essentially that would freeze Chicago Women in Trade at a point in time. In other words, on a go-forward basis, there would be entities that would be unwilling to enter into a relationship with them because those entities would have to certify that they are not promoting programs relating to DEI. It could be, though, that such entities want the gold star of being certified and therefore wouldn't object to that circumstance, right? Well, it could be, but I think that Judge Connelly, on the record before him, made the decision that it had to be more expansive than just the current relationships because if it was just limited to the current relationships, it would inhibit CWIT, Chicago Women in Trade, from moving forward with partnerships. Well, and that's exactly the question, right, is that line drawing, whether it's the CWIT and its contractual relationships are much broader than that. Well, it should... I'm sorry. Go ahead. I think it necessarily needs to be broader than that or else all we'll have is CWIT with its current set of relationships and unable to move further. But how do we apply CASA as a lower court with its restrictions with regard to what an injunction can involve and then reconcile that with the scope of the district court's injunction? So here's what's confounding for me. This is what's confounding. For the first time, I've heard today that it's too broad because there are things that happen within the Department of Labor that don't touch on Chicago Women in Trade at all. And there has been no factual showing at all. It's been a legal argument about why it's overbroad, but not a factual argument about why or how this could be overbroad. So in other words, I understand what the court's question to me, but we have said this will impede us on a go forward to expand it. If there are things that should have been... Look, if we determine that a nationwide injunction is improper here, what language in the injunction would provide the most complete relief to you? For instance, would including CWIT and all entities that partner with it be sufficient? What exactly? So this is my recommendation, Judge Rovner. If the court were inclined to do something like that, you should keep the remanded for the district court to make the decision about any carving to be done because the factual record is only new today about entities or other funds that are not implicated at all. This was not a record made by the government. We would need to give pretty clear guidance if we were to do that. Absolutely. Could that include, for example, allowing entities that enter into new relationships with CWIT to take advantage of the injunction? I'm going to say tentatively yes because that was Judge Canelli's concern. He said, listen, the problem is not a lot of people are going to stand up and want to challenge this and in order to challenge this, they'd have to raise their hand, seek an injunction on their own behalf. Could I ask you, Mr. Parker? Yes, sir. Suppose you all, I don't know if this July 29 memo fits this description, but suppose you got a detailed legal memorandum from the Department of Justice or other authorities within the administration saying, okay, here's what's legal, here's what's not. Does that solve your problem? We're not going to. No, because they don't view it that way. The February 5 Bondi memo and the court and this administration calls all DEI illegal. They call all policies illegal. The Department of Transportation, the secretary, said it covers all policies, programs, and activities that promote DEI, and this is in city of Seattle versus Trump, are presumptively illegal. That can't be. Number two, it doesn't solve a viewpoint discrimination issue. Number three, it leaves the unconstitutional condition issue, which as I've said, the government says nothing about except to cite to you a dissent in 1983 which doesn't mention the unconstitutional condition doctrine. One of the questions that I've had here really for both sides, and Mr. McArthur, I'd be interested in your thoughts, is how much does this certification provision actually matter? We have a huge fight over it, but with or without the certification, the government can still bring enforcement actions under federal anti-discrimination laws. That's the yes. Let me directly say something to you first. It really matters. In the 28J letter that I sent to this court, all of those cases are an attempt to assert the certification provision. It matters a lot because it's going to be a false claims act, trouble damages. It results in a CID, civil investigative demand, and everybody knows a false claims act violation can end up as a criminal case. So this also speaks to the government's claimed legitimate interest. Everybody has to adhere to anti-discrimination laws. As Judge Tiger said in the city and county of San Francisco versus Turner, there's no reason for this certification provision. Everybody's already complying or should comply. The government's interest is not, as I've said, compliance with anti-discrimination laws, or there would not be a carve-out for promoting programs in DEI. But Judge Tiger ruled against your view of the conduct speech distinction. The first time, not the second time. The second time, he looked at the July 29th bounty memo, and it's much deeper. He actually states, he distinguishes why he did something different in the first case, which is San Francisco Foundation, AIDS Foundation. So I agree with you, and I would be stuck just staring at you, but he came out different than that because he's looking at how they're actually implementing these things and not merely staring blindly at the bounty memo. And I'm saying to this court, you don't have to wait. You have no evidence of how it's being implemented. Courts have universally rejected the argument that all they're trying to do modestly is enforce current anti-discrimination laws as they existed prior to January 20th. Thank you, Mr. Parker. Mr. McArthur, we'll go back to you now for rebuttal argument. So with all due respect to my friend on the other side, I think he is continuing to do battle with a version of the executive order that does not exist. He is seizing on the word promote and saying that the executive order requires a certification that they don't advocate for DEI. That is not what this executive order does. It says you don't operate any programs promoting DEI. And to the extent there's any ambiguity about whether promote could sweep in abstract advocacy, I think that would be dispelled by Section 7B of the executive order, which says expressly, the order does not prevent federal contractors from engaging in First Amendment-protected speech. Like the anti-discrimination laws themselves, which do not regulate protected speech, the executive order doesn't regulate protected speech because it simply requires certification that they are complying with their preexisting legal obligations under the anti-discrimination laws. That also goes to your point, Judge Rovner, which I wanted to address about viewpoint neutrality. The first thing I would say there is that was not the basis of the district court's injunction here. The district court did not say this was a viewpoint discrimination, and that's important because I think significantly that issue is unripe. Because there are ways that this executive order could be implemented in which that issue would completely fall away. In fact, some agencies, when they have implemented this executive order, the way they've written it, they've said you have to certify that you do not operate any programs, including any DEI programs, that violate federal anti-discrimination law. That would take the viewpoint issue completely off the table. So that issue I think here is unripe. But even if you were to get to the merits of it, there is no viewpoint-based discrimination of speech precisely because the anti-discrimination laws regulate conduct, not speech. If a company says here's our DEI program, we are going to have a set-aside where more than half of our future hires will be people from traditionally underrepresented backgrounds. That would be a program promoting DEI. That is not the expression of a viewpoint. That is conduct. It is a practice. And if it is illegal under the anti-discrimination laws, it is by definition not protected speech. Thank you, Mr. McArthur. Thank you, Mr. Parker. The case will be taken under advisement.